IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

BRANDON EDENILSON VELASQUEZ §
TDCJ No. 02284305, §
 §
Petitioner, §
 §
V. §          No. 3:21-cv-3122-K-BN
 §
DIRECTOR, TDCJ-CID, §
 §
Respondent. §


**FINDINGS, CONCLUSIONS, AND RECOMMENDATION OF THE
UNITED STATES MAGISTRATE JUDGE**

Petitioner Brandon Edenilson Velasquez – a Texas prisoner – was charged in
Dallas County with aggravated robbery. Velasquez pleaded not guilty, but a jury
found him guilty as charged and sentenced him to 57 years' imprisonment. *See The
State of Texas v. Brandon Velasquez*, F-1612442-Y (Crim. Dist. Court 7, Dallas Cty.,
Texas, Dec. 12, 2018). Velasquez's conviction was affirmed on direct appeal. *See
Velasquez v. State*, No. 05-19-00003-CR, slip op. (Tex. App. – Dallas 2020, pet. ref'd);
Dkt. No. 3 at 3. Velasquez then filed a petition for discretionary review, which the
Texas Court of Criminal Appeals (CCA) refused. *See Velasquez v. State*, PD-0351-20
(Tex. Crim. App. June 17, 2020); Dkt. No. 3 at 3.

Velasquez filed a state habeas application. The habeas trial court determined
that there was no need for a hearing and recommended that the writ be denied. *See*
Dkt. No. 14-26 at 124. The CCA denied Velasquez's application without written order.

*See Ex parte Velasquez*, WR-93,151-01 (Tex. Crim. App. Nov. 17, 2021); Dkt No. 14-25 at 1.

Velasquez then filed this application for federal habeas relief pursuant to 28 U.S.C. § 2254. *See* Dkt. No. 3. United States District Judge Ed Kinkeade referred this action to the undersigned United States magistrate judge for pretrial management under 28 U.S.C. § 636(b) on a standing order of reference.

The State responded to Velasquez's application. *See* Dkt. No. 15. And Velasquez filed a reply. *See* Dkt. No. 19.

The undersigned now enters these findings of fact, conclusions of law, and recommendation that the Court should deny Velasquez's application for a writ of habeas corpus.

### Legal Standards

"Federal habeas features an intricate procedural blend of statutory and caselaw authority." *Adekeye v. Davis*, 938 F.3d 678, 682 (5th Cir. 2019). In the district court, this process begins – and often ends – with the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), under which "state prisoners face strict procedural requirements and a high standard of review." *Adekeye*, 938 F.3d at 682 (citation omitted).

Under the AEDPA, where a state court has already rejected a claim on the merits, a federal court may grant habeas relief on that claim only if the state court adjudication:

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as

determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d); *see Adekeye*, 938 F.3d at 682 ("Once state remedies are exhausted, AEDPA limits federal relief to cases where the state court's decision was 'contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States' or was 'based on an unreasonable determination of the facts in light of the evidence presented.'" (citation omitted)); *see also Allen v. Vannoy*, 659 F. App'x 792, 798-99 (5th Cir. 2016) (per curiam) (describing Section 2254(d) as "impos[ing] two significant restrictions on federal review of a habeas claim ... 'adjudicated on the merits in state court proceedings'").

And "[t]he question under AEDPA is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable – a substantially higher threshold." *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007); *see also Sanchez v. Davis*, 936 F.3d 300, 305 (5th Cir. 2019) ("[T]his is habeas, not a direct appeal, so our focus is narrowed. We ask not whether the state court denial of relief was incorrect, but whether it was unreasonable – whether its decision was 'so lacking in justification' as to remove 'any possibility for fairminded disagreement.'" (citation omitted)).

A state court decision is "contrary" to clearly established federal law if "it relies on legal rules that directly conflict with prior holdings of the Supreme Court or if it reaches a different conclusion than the Supreme Court on materially

indistinguishable facts." *Busby v. Dretke*, 359 F.3d 708, 713 (5th Cir. 2004); *see also Lopez v. Smith*, 574 U.S. 1, 2 (2014) (per curiam) ("We have emphasized, time and time again, that the [AEDPA] prohibits the federal courts of appeals from relying on their own precedent to conclude that a particular constitutional principle is 'clearly established.'" (citation omitted)).

"A state court unreasonably applies clearly established Supreme Court precedent when it improperly identifies the governing legal principle, unreasonably extends (or refuses to extend) a legal principle to a new context, or when it gets the principle right but 'applies it unreasonably to the facts of a particular prisoner's case.'" *Will v. Lumpkin*, 978 F.3d 933, 940 (5th Cir. 2020) (quoting *Williams v. Taylor*, 529 U.S. 362, 407-08 (2000); citation omitted)). "But the Supreme Court has only clearly established precedent if it has 'broken sufficient legal ground to establish an asked-for constitutional principle.'" *Id.* (quoting *Taylor*, 569 U.S. at 380-82; citations omitted).

"For purposes of § 2254(d)(1), an unreasonable application of federal law is different from an incorrect application of federal law.... A state court's determination that a claim lacks merit precludes federal habeas relief so long as fairminded jurists could disagree on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (citations and internal quotation marks omitted). "Under § 2254(d), a habeas court must determine what arguments or theories supported or ... could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are

inconsistent with the holding in a prior decision of [the Supreme] Court." *Id.* at 102 (internal quotation marks omitted); *see also Evans v. Davis*, 875 F.3d 210, 216 (5th Cir. 2017) (recognizing that Section 2254(d) tasks courts "with considering not only the arguments and theories the state habeas court actually relied upon to reach its ultimate decision but also all the arguments and theories it could have relied upon" (citation omitted)).

The Supreme Court has further explained that "[e]valuating whether a rule application was unreasonable requires considering the rule's specificity. The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations." *Richter*, 562 U.S. at 101 (internal quotation marks omitted). And "even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id.* at 102. The Supreme Court has explained that, "[i]f this standard is difficult to meet, that is because it was meant to be," where, "[a]s amended by AEDPA, § 2254(d) stops short of imposing a complete bar on federal court relitigation of claims already rejected in state proceedings," but "[i]t preserves authority to issue the writ in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with this Court's precedents," and "[i]t goes no further." *Id.* Thus, "[a]s a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.* at 103; *accord Burt v. Titlow*, 571 U.S. 12, 20 (2013) ("If this

standard is difficult to meet – and it is – that is because it was meant to be. We will not lightly conclude that a State's criminal justice system has experienced the extreme malfunction for which federal habeas relief is the remedy." (internal quotation marks, brackets, and citations omitted)).

As to Section 2254(d)(2)'s requirement that a petitioner show that the state court adjudication "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," the Supreme Court has explained that "a state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance" and that federal habeas relief is precluded even where the state court's factual determination is debatable. *Wood v. Allen*, 558 U.S. 290, 301, 303 (2010). Under this standard, "it is not enough to show that a state court's decision was incorrect or erroneous. Rather, a petitioner must show that the decision was objectively unreasonable, a substantially higher threshold requiring the petitioner to show that a reasonable factfinder must conclude that the state court's determination of the facts was unreasonable." *Batchelor v. Cain*, 682 F.3d 400, 405 (5th Cir. 2012) (brackets and internal quotation marks omitted).

The Court must presume that a state court's factual determinations are correct and can find those factual findings unreasonable only where the petitioner "rebut[s] the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); *Gardner v. Johnson*, 247 F.3d 551, 560 (5th Cir. 2001).

This presumption applies not only to explicit findings of fact but also "to those

unarticulated findings which are necessary to the state court's conclusions of mixed law and fact." *Valdez v. Cockrell*, 274 F.3d 941, 948 n.11 (5th Cir. 2001); *see also Ford v. Davis*, 910 F.3d 232, 235 (5th Cir. 2018) (Section 2254(e)(1) "'deference extends not only to express findings of fact, but to the implicit findings of the state court.' As long as there is 'some indication of the legal basis for the state court's denial of relief,' the district court may infer the state court's factual findings even if they were not expressly made." (footnotes omitted)).

And, even if the state court errs in its factual findings, mere error is not enough – the state court's decision must be "*based* on [an] unreasonable factual determination." *Will v. Lumpkin*, 978 F.3d 933, 942 (5th Cir. 2020) (emphasis in original). In other words, habeas relief is unwarranted if the state court's conclusion would not have changed even if it got the disputed factual determination right. *See id.*

Further, "determining whether a state court's decision resulted from an unreasonable legal or factual conclusion does not require that there be an opinion from the state court explaining the state court's reasoning." *Richter*, 562 U.S. at 98; *see also Pondexter v. Dretke*, 346 F.3d 142, 148 (5th Cir. 2003) ("a federal habeas court is authorized by Section 2254(d) to review only a state court's 'decision,' and not the written opinion explaining that decision" (quoting *Neal v. Puckett*, 286 F.3d 230, 246 (5th Cir. 2002) (en banc) (per curiam))); *Evans*, 875 F.3d at 216 n.4 (even where "[t]he state habeas court's analysis [is] far from thorough," a federal court "may not review [that] decision de novo simply because [it finds the state court's] written opinion

'unsatisfactory'" (quoting *Neal*, 286 F.3d at 246)). This is "[b]ecause a federal habeas court only reviews the reasonableness of the state court's ultimate decision," "not the written opinion explaining that decision." *Schaetzle v. Cockrell*, 343 F.3d 440, 443 (5th Cir. 2003) (quoting *Neal*, 286 F.3d at 246).

Section 2254 thus creates a "highly deferential standard for evaluating state court rulings, which demands that state-court decisions be given the benefit of the doubt." *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002). To overcome this standard, a petitioner must show that "there was no reasonable basis for the state court to deny relief." *Richter*, 562 U.S. at 98.

That is, a petitioner must, in sum, "show, based on the state-court record alone, that any argument or theory the state habeas court could have relied on to deny [him] relief would have either been contrary to or an unreasonable application of clearly established federal law as determined by the Supreme Court." *Evans*, 875 F.3d at 217.

## Analysis

Velasquez makes the following claims for habeas relief:

1. His appellate counsel was ineffective for failing to challenge the denial of a suppression motion;

2. His trial counsel was ineffective for failing to call a fingerprint expert;

3. His trial counsel was ineffective for failing to object to the admission of extraneous acts; and

4. The trial court's admission of Velasquez's unadmonished statements that he was a gang leader was not harmless error.

*See* Dkt. No. 3 at 7-15.

## A. Ineffective Assistance of Counsel

The Court reviews the merits of properly exhausted IAC claims, whether directed at trial or appellate counsel, under the two-prong test established in *Strickland v. Washington*, 466 U.S. 668 (1984), under which a petitioner "'must show that counsel's performance'" – "'strongly presume[d to be] good enough'" – "'was [1] objectively unreasonable and [2] prejudiced him.'" *Coleman v. Vannoy*, 963 F.3d 429, 432 (5th Cir. 2020) (quoting *Howard v. Davis*, 959 F.3d 168, 171 (5th Cir. 2020)).

To count as objectively unreasonable, counsel's error must be "so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Strickland*, 466 U.S. at 687; *see also Buck v. Davis*, 137 S. Ct. 759, 775 (2017) (reaffirming that "[i]t is only when the lawyer's errors were 'so serious that counsel was not functioning as the "counsel" guaranteed ... by the Sixth Amendment' that *Strickland*'s first prong is satisfied" (citation omitted)). "And to establish prejudice, a defendant must show 'that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *Andrus v. Texas*, 140 S. Ct. 1875, 1881 (2020) (per curiam) (quoting *Strickland*, 466 U.S. at 694).

"A conscious and informed decision on trial tactics and strategy cannot be the basis for constitutionally ineffective assistance of counsel unless it is so ill chosen that it permeates the entire trial with obvious unfairness." *Cotton v. Cockrell*, 343 F.3d 746, 752-53 (5th Cir. 2003); *see also Feldman v. Thaler*, 695 F.3d 372, 378 (5th Cir. 2012) ("[B]ecause of the risk that hindsight bias will cloud a court's review of counsel's

trial strategy, 'a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy.'" (quoting *Strickland*, 466 U.S. at 689)).

And, "[j]ust as there is no expectation that competent counsel will be a flawless strategist or tactician, an attorney may not be faulted for a reasonable miscalculation or lack of foresight or for failing to prepare for what appear to be remote possibilities." *Richter*, 562 U.S. at 110. "The Supreme Court has admonished courts reviewing a state court's denial of habeas relief under AEDPA that they are required not simply to give [the] attorney's the benefit of the doubt, ... but to affirmatively entertain the range of possible reasons [petitioner's] counsel may have had for proceeding as they did." *Clark v. Thaler*, 673 F.3d 410, 421 (5th Cir. 2012) (internal quotation marks omitted).

Therefore, on habeas review under AEDPA, "if there is any 'reasonable argument that counsel satisfied *Strickland*'s deferential standard,' the state court's denial must be upheld." *Rhoades v. Davis*, 852 F.3d 422, 432 (5th Cir. 2017) (quoting *Richter*, 562 U.S. at 105); *see also Sanchez*, 936 F.3d at 305 ("As the State rightly puts it, we defer 'both to trial counsel's reasoned performance and then again to the state habeas court's assessment of that performance.'" (quoting *Rhoades*, 852 F.3d at 434)); *Dunn v. Reeves*, 141 S. Ct. 2405, 2410-11 (2021) (per curiam) (noting that a federal court can may grant habeas relief only if every "'fairminded juris[t]'" would agree that every reasonable lawyer would have made a different decision (citing *Richter*, 562

U.S. at 101).

To demonstrate prejudice, a habeas petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. Thus, "the question is not whether a court can be certain counsel's performance had no effect on the outcome or whether it is possible a reasonable doubt might have been established if counsel acted differently." *Richter*, 562 U.S. at 111. "Instead, *Strickland* asks whether it is 'reasonably likely' the result would have been different," which "does not require a showing that counsel's actions 'more likely than not altered the outcome,' but the difference between *Strickland*'s prejudice standard and a more-probable-than-not standard is slight and matters 'only in the rarest case." *Id.* at 111-12 (quoting *Strickland*, 466 U.S. at 693, 696, 697). "The likelihood of a different result must be substantial, not just conceivable." *Id.* at 112.

IAC claims are considered mixed questions of law and fact and are therefore analyzed under the "unreasonable application" standard of 28 U.S.C. § 2254(d)(1). *See Gregory v. Thaler*, 601 F.3d 347, 351 (5th Cir. 2010); *Adekeye*, 938 F.3d at 682.

Where the state court has adjudicated claims of ineffective assistance on the merits, this Court must review a habeas petitioner's claims under the "doubly deferential" standards of both *Strickland* and Section 2254(d). *Cullen v. Pinholster*, 563 U.S. 170, 190, 202 (2011); *compare Rhoades*, 852 F.3d at 434 ("Our federal habeas review of a state court's denial of an ineffective-assistance-of-counsel claim is 'doubly

deferential' because we take a highly deferential look at counsel's performance through the deferential lens of § 2254(d)." (citation omitted)), *with Johnson v. Sec'y, DOC*, 643 F.3d 907, 910-11 (11th Cir. 2011) ("Double deference is doubly difficult for a petitioner to overcome, and it will be a rare case in which an ineffective assistance of counsel claim that was denied on the merits in state court is found to merit relief in a federal habeas proceeding.").

In such cases, the "pivotal question" for this Court is not "whether defense counsel's performance fell below *Strickland*'s standard"; it is "whether the state court's application of the *Strickland* standard was unreasonable." *Richter*, 562 U.S. at 101; *see also id.* at 105 ("Establishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult. The standards created by *Strickland* and § 2254(d) are both 'highly deferential,' and when the two apply in tandem, review is 'doubly' so." (internal quotation marks and citations omitted)). In other words, AEDPA does not permit a *de novo* review of state counsel's conduct in these claims under *Strickland. See id.* at 101-02. Instead, on federal habeas review of a *Strickland* claim fully adjudicated in state court, the state court's determination is granted "a deference and latitude that are not in operation when the case involves review under the *Strickland* standard itself." *Id.* at 101.[1]

---

[1] *See also Woods v. Etherton*, 136 S. Ct. 1149, 1151 (2016) (per curiam) (explaining that federal habeas review of ineffective-assistance-of-counsel claims is "doubly deferential" "because counsel is 'strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment'"; therefore, "federal courts are to afford 'both the state court and the defense attorney the benefit of the doubt'" (quoting *Burt*, 571 U.S. at 22, 15)); *Adekeye*, 938 F.3d at 683-84 ("The Supreme Court standard on prejudice is

###### i.    *Failure to Present Fingerprint Expert (Claim 2)*

Velasquez faults his trial counsel for not calling a fingerprint expert at trial because a fingerprint analysis would have shown that his fingerprints were not on the weapon used in the robbery. *See* Dkt. No. 3 at 7. Velasquez claims that the habeas trial court issued findings and erroneously determined that this claim should be rejected because he failed to establish how the expert testimony would have changed the outcome of the proceeding. Dkt. No. 18 at 5.

These alleged habeas trial court findings are not in the state record. In any event, the undersigned agrees that Velasquez cannot show prejudice; nor can he show ineffectiveness.

First, regarding ineffectiveness, Velasquez's trial counsel filed a motion for the court to appoint a fingerprint expert to counter the State's expert testimony linking Velasquez's firearm to another murder. *See* Dkt. No. 14-7 at 109. Velasquez "believes" that the motion was granted and that his counsel failed to follow up with the expert,

sharply defined: 'It is not enough for the defendant to show that the errors had some conceivable effect on the outcome of the proceeding.' [A petitioner] must show it was 'reasonably likely' the jury would have reached a different result, not merely that it could have reached a different result. The Court reaffirmed this point in *Richter*: 'The likelihood of a different result must be substantial, not just conceivable.' Now layer on top of that the habeas lens of reasonableness. [Where] the state court has already adjudicated [a petitioner's] ineffective-assistance claim on the merits, he must show that the court's no-prejudice decision is 'not only incorrect but "objectively unreasonable."' Put differently, [he] must show that every reasonable jurist would conclude that it is reasonable likely that [a petitioner] would have fared better at trial had his counsel conducted [himself differently]. 'It bears repeating,' the Supreme Court emphasized in *Richter*, 'that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable.'" (footnotes omitted)).

showing ineffectiveness. *See* Dkt. No. 3 at 9; Dkt. No. 14-7. at 109. But there is nothing in state record showing that the trial court granted the motion.

Velasquez's belief that it did so is speculative and insufficient to support habeas relief. If the trial court denied the motion, Velasquez does not explain how his counsel was ineffective or what else he could have done to get an expert given Velasquez's lack of funds.

But, even if the trial court did grant the motion and Velasquez's trial counsel failed to follow up with the expert, Velasquez fails to show prejudice. Failure-to-call-witness IAC claims are disfavored in the Fifth Circuit "because the presentation of testimonial evidence is a matter of trial strategy and because allegations of what a witness would have stated are largely speculative." *Day v. Quarterman*, 566 F.3d 527, 538 (5th Cir. 2009).

To succeed on these claims, the petitioner must "name the witness, demonstrate that the witness was available to testify and would have done so, set out the content of the witness's proposed testimony, and show that the testimony would have been favorable to a particular defense." *Id.* (citations omitted). This standard applies to both uncalled lay and expert witnesses. *See id.*

Velasquez does not make the required showing. He does not name the expert witness, show that the witness was available to testify at his trial and would have done so, or set out the specific content of the expert testimony other than the conclusory and speculative assertion that it would have rebutted the State expert's testimony, which is insufficient. *See, e.g., Pitts v. Tanner*, Civil Action No. 6:14-cv-

3415, 2015 WL 10045174, at *21 (W.D. La. Dc. 14, 2015), *rec. accepted* 2016 WL 554884 (W.D. La. Feb. 10, 2016) ("Petitioner fails to meet this standard. He does not show, by competent evidence, what the witnesses' testimony would have been and petitioner's mere speculation is insufficient to justify habeas corpus relief.").

Velasquez's failure-to-call-expert-witness IAC claim is meritless and should be denied.

### ii. *Failure to Object to Extraneous Crime Evidence (Claim 3)*

During the punishment phase, the State introduced evidence that Velasquez committed an extraneous gang-related murder and that another gang-related murder was committed at his direction.

Velasquez claims that his trial counsel was ineffective for failing to object that the probative value of the extraneous crime evidence was substantially outweighed by "the cumulative unfair prejudice." Dkt. No. 3 at 12. Velasquez argues that the State's presentation of these extraneous crimes "dominated the punishment phase," took several days to complete, and involved around 200 exhibits and that the State then emphasized the extraneous crimes during its closing argument. Dkt. No. 3 at 12.

This extraneous crime evidence, according to Velasquez, violates the United States Supreme Court's jurisprudence, specifically its admonition in *Old Chief v. United States*, 519 U.S. 172 (1997), and *Payne v. Tennessee*, 501 U.S. 808 (1991), that a "person may not be punished for any crime that he is not convicted for." Dkt. No. 3 at 13.

"When a petitioner alleges prejudice from trial counsel's failure to raise an objection, he "must show there was a reasonable probability that the trial court would have granted it, or would have reversibly erred by refusing it." *Amos v. Thornton*, 646 F.3d 199, 209 (5th Cir. 2011) (quotation omitted). Velasquez fails to make that showing.

A Texas trial court has broad discretion in determining the admissibility of evidence presented at the punishment phase of the proceedings. *See Mitchell v. State*, 546 S.W.3d 780, 788 (Tex. App. – Houston [1st Dist.] 2018, no pet.) (citation omitted). "Relevancy in the punishment phase is 'a question of what is helpful to the jury in determining the appropriate sentence for a particular defendant in a particular case.'" *Ellison v. State*, 201 S.W.3d 714, 719 (Tex. Crim. App. 2006) (quoting *Rogers v. State*, 991 S.W.2d 263, 265 (Tex. Crim. App. 1999)).

And the Texas Legislature "has expressly provided that 'relevant' punishment evidence includes … extraneous-offense evidence." *Sims v. State*, 273 S.W.3d 291, 295 (Tex. Crim. App. 2008) (discussing Tex. Code Crim. Proc. art. 37.07, § 3(a) (1)). The prosecution is authorized to introduce the underlying facts of an uncharged extraneous offense during the punishment phase of a trial, so long as the extraneous offense is proven beyond a reasonable doubt. *See Sims*, 273 S.W.3d at 295; Tex. Crim. Pro. art. 37.07, § 3(a)(1).

But, even if otherwise relevant under Article 37.07, Texas Rule of Evidence 403 allows a court to exclude evidence "if its probative value is substantially outweighed by a danger of … unfair prejudice." "A rule 403 analysis should include,

but is not limited to, considering the probative value of the evidence; the potential of the evidence to impress the jury in some irrational, indelible way or to suggest a decision on an improper basis; the time the proponent needs to develop the evidence; and the proponent's need for the evidence." *Sanders v. State*, 422 S.W.3d 809, 815 (Tex. App. – Fort Worth 2014, pet. ref'd).

Based on the legislative directive in Article 37.07, Texas courts have often rejected Rule 403 challenges to extraneous act evidence during the punishment phase. *See, e.g.*, *Calderon v. State*, 950 S.W.2d 121, 128 (Tex. App. – El Paso 1997, no pet.) (finding that, in light of Article 37.07, a Rule 403 objection to extraneous act evidence during sentencing likely would have been meritless). As one court noted, "although the effect of the [extraneous act] evidence on the jury may have been indelible, it was not irrational, given that the legislature has expressly permitted evidence of unadjudicated extraneous crimes and bad acts to allow juries to tailor appropriate punishments." *Sanders*, 422 S.W.3d at 815 (affirming trial court's rejection of Rule 403 challenge to evidence of extraneous crimes during punishment and noting that "[e]vidence of defendant's prior assaults certainly has a tendency to cause a jury to increase his punishment. But that was its legitimate purpose. The value of the extraneous offense evidence was in permitting the jury to tailor the sentence to the defendant").

Based on this jurisprudence, it is, at best, speculative that the trial court would have sustained a Rule 403 objection. The pertinent considerations support the extraneous crime evidence's admission. The extraneous crime evidence was explicitly

relevant pursuant to Article 37.07. And, as the *Sanders* court noted, the evidence would not affect the jury in an irrational way, as the Legislature allowed for its consideration. As for the State's need for it, given the broad punishment range (life or not more than 99 years or less than 5 years), the extraneous crime evidence was arguably necessary to paint a full picture of Velasquez's criminal history to ensure that his sentence fit his criminal character, which is, again, a relevant consideration under Article 37.07. And the final factor – the length of time to present the evidence – also weighs against exclusion. While it took the State a long time to present its extraneous crime evidence, this was necessary to prove the extraneous crimes beyond a reasonable doubt, which Article 37.07 requires.

As for *Old Chief* and *Payne*, these cases are inapposite. Neither addresses the confluence of Rule 403 and Article 37.07.

*Old Chief* only held that, in cases where the issue in dispute is the defendant's status as a felon, it violates Federal Rule of Evidence 403 to admit the record of conviction to prove the defendant's status when the defendant is willing to stipulate. *Old Chief*, 519 U.S. at 190-91. This is not a case in which Velasquez's felon status is at issue and he is trying to stipulate to that.

*Payne* dealt with the admission of victim impact evidence during the penalty phase of a capital trial. It does not support Velasquez's argument here.

Velasquez fails to show that a Rule 403 objection would have had a reasonable probability of success. He fails to show that the state court's rejection of this claim

was contrary to or involved an unreasonable application of clearly established federal law as determined by the Supreme Court. 28 U.S.C. § 2254(d)(1).

### iii. *Failure of Appellate Counsel to Argue Denial of Suppression Motion (Claim 1)*

Velasquez's trial counsel moved to suppress evidence – specifically the handgun that was used in the armed robbery – claiming that it was the product of "an illegal search and seizure of the automobile in which [Velasquez] was a passenger." Dkt. No. 14-7 at 78-79. The trial court denied the motion, and Velasquez's appellate counsel did not argue the issue on appeal, which Velasquez claims was ineffective. *See* Dkt. No. 3 at 7.

The *Strickland* framework applies to appellate IAC claims. When reviewing these claims, courts should first "assess whether counsel failed to raise a nonfrivolous issue that was clearly stronger than the issues raised on appeal." *Moore v. Vannoy*, 968 F.3d 482, 489 (5th Cir. 2020). Appellate "[c]ounsel need not raise every nonfrivolous ground on appeal, but should instead present solid, meritorious arguments based on directly controlling precedent." *Ries v. Quarterman*, 522 F.3d 517, 531-32 (5th Cir. 2008) (internal quotation marks and citation omitted). When an appellate IAC claim is based on the failure to raise an issue on direct appeal, the prejudice prong under *Strickland* requires the movant to demonstrate that the appellate court would have granted relief if the issue had been raised. *United States v. Phillips*, 210 F.3d 345, 348 (5th Cir. 2000).

Some background regarding the search and seizure at issue is helpful. An officer relayed to another officer on patrol that he saw a vehicle that matched the

description of a vehicle driven by participants in an armed robbery that occurred in the area hours earlier. *See* Dkt. No. 14-10 at 34. He relayed to the patrolling officer that the suspects in the robbery were thought to be younger El Salvadoran males, one or more of whom were wearing a black baseball cap, black jacket, and jeans. *See id.* at 43-44. The patrolling officer pulled over the suspect vehicle less than a mile from the spot of the robbery for speeding and for having a nonfunctional third brake light. *See id.* at 36-39, 45. The driver had an El Salvadoran ID. *See id.* at 43. Velasquez, who was sitting in the back of the car but visible to the patrolling officer because his window was rolled down, was wearing a black baseball cap, black jacket, and jeans. *See id.* at 44-45.

The patrolling officer ordered the driver and passengers, including Velasquez, out of the vehicle. *See id.* at 45-46. He asked the driver for consent to search the car, to which the driver responded "como hazes," which the patrolling officer – who testified that he spoke some Spanish but is not bilingual – interpreted to mean "whatever or I don't care." *Id.* at 47, 56. The patrolling officer attempted to verify the consent by asking again (whether in Spanish or English is unclear) if he could search the vehicle, and the driver nodded in the affirmative. *See id.* at 47.

The patrolling officer then searched the vehicle. *See id.* at 48. The search revealed cash, multiple cell phones, and wallets in the console, one of which had the robbery victim's identification and bank cards. *See id.* at 49. Multiple guns were found in the vehicle, including a gun that was sitting at the feet of where Velasquez was

sitting. *See id.* at 50. The patrolling officer arrested Velasquez for unlawfully carrying a weapon. *See id.* at 66.

These facts do not show a Fourth Amendment violation.

First, the initial seizure was supported by reasonable suspicion of multiple traffic violations. *See United States v. Lopez-Moreno*, 420 F.3d 420, 430 (5th Cir. 2005) ("For a traffic stop to be justified at its inception, an officer must have an objectively reasonable suspicion that some sort of illegal activity, such as a traffic violation, occurred, or is about to occur, before stopping the vehicle.").

No one disputes that. Velasquez instead suggests that the officer's actions following the stop exceeded the circumstances that justified the stop. "An officer's subsequent actions are not reasonably related in scope to the circumstances that caused him to stop the vehicle if he detains its occupants beyond the time needed to investigate the circumstances that caused the stop, unless he develops reasonable suspicion of additional criminal activity in the meantime." *United States v. Pack*, 612 F.3d 341, 347, 350 (5th Cir.), *modified on other grounds*, 622 F.3d 383 (5th Cir. 2010). "If the officer develops reasonable suspicion of additional criminal activity,…he may further detain [the] occupants [of the vehicle] for a reasonable time while appropriately attempting to dispel this reasonable suspicion." *United States v. Andres*, 703 F.3d 828, 833 (5th Cir. 2013) (alterations in original).

There is no indication from the state record that the stop lasted longer than the time needed to investigate the circumstances that led to it. But, even if it did, the patrolling officer had reasonable suspicion of additional criminal activity to prolong

the detention given that the vehicle matched the description of one involved in a robbery hours earlier and close to the scene of the stop; the suspects were reported to be El Salvadoran, and the driver had an El Salvadoran ID; and Velasquez was wearing clothing that matched the description of the robber provided by the victim. Given that reasonable suspicion, the patrolling officer would have been justified in prolonging the stop to ask for permission to search the vehicle and then searching it once he got that permission. *See*, *e.g.*, *United States v. Brown*, 567 F. App'x 272, 279 (5th Cir. 2014) ("Rather than conduct a dog sniff, Somers chose to extend the stop by sixty seconds to seek Brown's consent to search the vehicle. This brief prolongation of the traffic stop was an appropriate, reasonable attempt to dispel or confirm the suspicions regarding the Brown's involvement in narcotics trafficking.").

Velasquez also challenges the search of the vehicle, arguing that, because of the language barrier, the driver's consent to search was invalid. But, although Velasquez had standing to challenge the seizure of the vehicle as a passenger under *Brendlin v. Calif.*, 551 U.S. 249 (2007), whether he has standing to challenge its search is a different issue. "To gain Fourth Amendment standing to challenge the validity of a search – not the validity of the underlying seizure – passengers must continue to show a 'legitimate expectation of privacy' – in the area or item searched." *United States v. Powell*, 732 F.3d 361, 375 (5th Cir. 2013). And "'typically,' a passenger in a car, distinct from the driver, 'lacks standing to complain of its search.'" *United States v. Rodriguez*, 33 F.4th 807, 811 (5th Cir. 2022) (quoting *United States v. Roberson*, 6 F.3d 1088, 1091 (5th Cir. 1993)).

Here, Velasquez was a passenger in the vehicle, and he has not argued or shown that he had a possessory interest in it. As a mere passenger without such an interest, Velasquez did not have a legitimate expectation of privacy in the car. *See United States v. Oliva*, C.R. No. C-09-341, 2009 WL 1918458, at *3 (S.D. Tex. July 1, 2009) (typically a passenger without a possessory interest in a vehicle lacks standing to contest a search) (citing *United States v. Riazco*, 91 F.3d 752, 754 (5th Cir. 1996); quoting, in turn, *United States v. Roberson*, 6 F.3d 1088, 1091 (5th Cir. 1993)). He lacks standing to challenge the search of the car, so any argument on appeal contesting the search would have been meritless.

Velasquez argues that he had standing to contest the search under *Brendlin* and that the habeas trial court erred in concluding otherwise in its findings (which, again, are not in the state court record), but the undersigned cannot agree. "*Brendlin* is clearly focused on the Fourth Amendment implications of a police stop on an individual's person and freedom of movement – the seizure of the *person* – [n]othing in the Court's opinion alters the standing analysis for searching an area of a vehicle or an item found in a vehicle." *Powell*, 732 F.3d at 375.

Finally, Velasquez contends that there was no probable cause to arrest him for unlawfully carrying a weapon because the only evidence supporting the arrest was his proximity to the weapon, which fails to establish that he had care, custody, or control over it. *See* Dkt. No. 3 at 5. Officers may arrest an individual in a public place without a warrant if they have probable cause to believe that the individual committed a felony. *See United States v. Watson*, 423 U.S. 411, 423-24 (1976).

"Probable cause for a warrantless arrest exists when the totality of facts and circumstances within a police officer's knowledge at the moment of arrest are sufficient for a reasonable person to conclude that the suspect had committed or was committing an offense." *United States v. Wadley*, 59 F.3d 510, 512 (5th Cir. 1995).

The officer's subjective reason for the arrest is irrelevant. If there is probable cause to believe that any crime has been committed, a warrantless arrest is reasonable even if the officer states that he is arresting the defendant for an offense for which he lacked probable cause. *See, e.g.*, *Devenpeck v. Alford*, 543 U.S. 146, 153 (2004) (an arrest is proper if there are objective facts establishing probable cause for arrest, even if the arresting officer stated that he was arresting the defendant for another offense for which he lacked probable cause); *Lee v. Ferraro*, 284 F.3d 1188, 1196 (11th Cir. 2002) ("[W]hen an officer makes an arrest, which is properly supported by probable cause to arrest for a certain offense, neither his subjective reliance on an offense for which no probable cause exists nor his verbal announcement of the wrong offense vitiates the arrest."); *see also United States v. Green*, Case No. CR415-133, 2015 WL 6755001, at *3 (S.D. Ga. Nov. 4, 2015), *rec. accepted* 2015 WL 9307305 (S.D. Ga. Dec. 21, 2015) ("[A] warrantless arrest is reasonable under the Fourth Amendment if the objective facts known to the officer establish probable cause to believe *any* crime has been committed; the officer's 'subjective reason for making the arrest' is 'irrelevant' to the Fourth Amendment inquiry."[)] (quoting *Devenpeck*, 543 U.S. at 153).

There was probable cause to arrest Velasquez for unlawful possession of a firearm – or a reasonable attorney could have come to that conclusion in deciding not to present this issue on direct appeal. Specifically, the evidence established that the officer found the gun with a cellphone on top of it on the floorboard at the feet of where Velasquez was sitting. *See* Dkt. No. 14-10 at 45-46, 50-51.

Alternatively, there was probable cause to arrest Velasquez for armed robbery. He was in a vehicle that matched the description of the vehicle driven by participants in a recent armed robbery that occurred near the traffic stop, he matched the physical description of the robber, the vehicle in which he was a passenger contained items stolen from the victim, and there were multiple firearms in the vehicle.

At bottom, appellate counsel could have reasonably concluded that the suppression issues were meritless or not the strongest grounds for an appeal. At the least, reasonable jurists evaluating this claim at the state level could have come to that conclusion.

Velasquez is not entitled to federal habeas relief in relation to his appellate IAC claim and it should be denied.

## B. *Miranda* Violation (Claim 4)

In his final claim, Velasquez claims that the appellate court erred when it held that the admission at punishment of his unadmonished statements regarding his gang membership was harmless. *See* Dkt. No. 3 at 11. Specifically, Velasquez claims that he gave the statements to an officer during a custodial interrogation without the benefit of warnings under *Miranda v. Arizona*, 384 U.S. 436 (1996), and the officer

then testified as an expert during the punishment phase of Velasquez's trial and disclosed those statements.

In rejecting this claim, the state appellate court found that, even if Velasquez's statements were erroneously admitted, any error was harmless.

First, the State's punishment evidence included other evidence of Velasquez's gang membership such as photographs of his tattoos, expert testimony that those tattoos related to the 18th Street Gang, evidence on his cell phone connecting him with the 18th Street Gang, and photographs of him displaying gang signs. *See* Dkt. No. 15-1 at 9.

And, second, Velasquez's statements about his gang membership were only a small part of the State's overall punishment evidence, and it "pale[d] when compared to the far more significant – and aggravating – punishment evidence regarding the murders of Villatoro and Carillo-Cruz." *Id.* at 10.

That reasoning was not contrary to or an unreasonable application of clearly established federal law as determined by the Supreme Court. The harmless error rule applies to alleged *Miranda* violations. *See United States v. Paul*, 142 F.3d 836, 843 (5th Cir. 1998). "The harmless-error standard applicable in conducting habeas review requires the granting of habeas relief on the basis of constitutional trial error only if the error '"had substantial and injurious effect or influence in determining the jury's verdict."' *Goodwin v. Johnson*, 132 F.3d 162, 181 (5th Cir. 1997).

Here, as the state appellate court explained, given the other evidence of Velasquez's gang membership, and given the other evidence presented concerning his

involvement in multiple murders, the unadmonished statements did not have a "substantial or injurious effect" on the jury's punishment verdict.

Velasquez counters that his custodial statements disclosed more than mere gang membership – they also disclosed his high rank as a "shot caller" within the gang. But other witnesses also testified as to Velasquez's rank within the gang, so the unadmonished statements were merely cumulative and did not have a "substantial and injurious effect or influence in determining the jury's verdict." *See* Dkt. No. 14-14 at 133; *Goodwin*, 132 F.3d at 181.

Velasquez argues that the State referred to Velasquez's statements – specifically his admission that he was a "shot caller" – during its closing argument, revealing how important those statements were to the State's case and, in turn, how prejudicial they were to Velasquez. The State referenced these statements during its closing argument, but this was only a small piece of the picture that the State presented. It mostly focused on the circumstances of the aggravated robbery for which Velasquez was on trial and his involvement in two gang-related murders. *See* Dkt. No. 14-17 at 32-40.

In sum, the state court's rejection of Velasquez's *Miranda* claim was not contrary to or an unreasonable application of clearly-established federal law.

## C. Request for Evidentiary Hearing and for Testing of Evidence

Velasquez requests an evidentiary hearing because the CCA did not obtain his counsel's affidavit in considering his habeas application. *See*, *e.g.*, Dkt. No. 3 at 9, 11. He also requests that the Court "test the firearm for [his] fingerprints." *Id.* at 11.

To the extent that Velasquez is claiming that there were errors in his state habeas proceedings, such errors cannot serve "as a basis for setting aside a valid original conviction," because these arguments are attacks on the proceeding collateral to his detention and not the detention itself. *Nichols v. Scott*, 69 F.3d 1255, 1275 (5th Cir. 1995).

As for the request for an evidentiary hearing and testing of evidence, generally, a federal habeas court is limited to consideration of the evidence that was before the state habeas court. *See Cullen*, 563 U.S. at 182-83. Because the CCA denied Velasquez's claims on the merits, this Court is limited to consideration of the evidence that was before the state habeas court. *See Cullen*, 563 U.S. at 182-83. And, as discussed above, Velasquez has not raised any claims that would entitle him to relief.

## Recommendation

The Court should deny Velasquez's application for federal habeas relief.

A copy of these findings, conclusions, and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions, and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions, and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure

to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

     DATED: August 9, 2023

 

DAVID L. HORAN
UNITED STATES MAGISTRATE JUDGE